Opinion by
 

 Stadtfeld, J.,
 

 On September 9, 1933, John Nazarey, Jr. was in the employ of the defendant as a brakeman on a motor or electric locomotive. On that day, he went to work at about 3:30 p.m. At 6:30 p.m. he was riding on the right-hand side of the motor in a stooping position. Directly over his head was an electric trolley wire carrying 250 volts direct current. The motor approached a low place in the roof at which point the space between the rail and the trolley wire was four feet ten inches, and the battery wire about two to two and one-half inches above decedent’s head. The inset on which he was riding was approximately a foot and a half from the rail, so that Nazarey was crouched in a space of three feet and four inches. He was wearing a cloth cap and his clothing was quite wet. As the motor reached this low spot, Nazarey was heard to say “Oh” and fell
 
 *95
 
 off the motor. The operator of the motor, Michael Ferenchik, immediately brought the motor! to a stop and went over to where Nazarey lay. He, with the aid of others, attempted to revive Nazarey who neither moved nor spoke a word.
 

 The claimants, mother and father of the deceased, filed a petition for compensation. Defendant filed an answer in which is set up the defense that decedent died from natural causes. No testimony was offered on behalf of defendant.
 

 The referee 'found that deceased came to his death through contact with a trolley wire while in the employ of the defendant and awarded compensation. Defendant appealed to the Workmen’s Compensation Board and the award was affirmed. On appeal to the Court of Common Pleas, judgment was entered on the award in an opinion by Coughlin, J. This appeal followed.
 

 Compensation having been awarded by the referee and the award having been affirmed by the board, the only question now before the court is whether there is legally competent evidence to sustain the findings of the board:
 
 Kelly v. Ochiltree Electric Co.,
 
 125 Pa. Superior Ct. 161, 190 A. 166.
 

 In determining this question, the claimants are entitled to have the evidence examined in the light most favorable to them, all reasonable inferences being drawn in their favor:
 
 Baumann v. Howard J. Ehmke Co.,
 
 126 Pa. Superior Ct. 108, 190 A. 343;
 
 Franks v. Point Marion Bridge Co.,
 
 128 Pa. Superior Ct. 269, 193 A. 421.
 

 It is well settled that the probable nature of an accident followed by death, for which compensation is claimed, may be established by circumstantial evidence alone:
 
 McCluskey v. Stock Exch. Bldg. Corp. et al.,
 
 100 Pa. Superior Ct. 136;
 
 Zelazny v. Seneca Coal Mining Co.,
 
 275 Pa. 397, 119 A. 487;
 
 Flucker v. Carnegie Steel Co.,
 
 263 Pa. 113, 106 A. 192;
 
 McCarthy v. General Electric Co.,
 
 293 Pa. 448, 143 A. 116;
 
 Franks v. Point Marion Bridge Co.,
 
 supra.
 

 
 *96
 
 We now apply the above principles to the present case. In proving their claim, claimants were required to produce testimony as to the facts surrounding the death of their son. To meet that burden, they called the only living eye-witness, Michael Ferenchik. He described the circumstances as hereinbefore stated. From this evidence, aside from the medical testimony, the board found that decedent died from electrocution.
 

 Medical testimony was supplied by Dr. Croop and Dr. Janjigian, both being of the opinion that decedent died a violent death. Dr. Croop testified, in answer to a hypothetical question adduced from the lay testimony and later found as facts by both the referee and the board, that in his professional opinion, the cause of death was electrocution.
 

 The pathologist, Dr. Janjigian, was of the opinion that the cause was poison. He said it might have been alcoholic; it might have been metallic. The effect of his testimony was entirely destroyed by his later statements. He testified in part as follows: “Doctor, if it were proven that this man did not have any definite chronic disease of these organs and that he had not taken alcohol in any form on the day of his death or the day before and that he was a temperate man, then how would you account for his death? A. Then I would say I don’t know.”
 

 Dr. Janjigian, who made a post-mortem examination, was called by claimants solely for the purpose of identifying his report which was offered in evidence. This pathological diagnosis, as shown on the report, was as follows: “Pathological Diagnosis: acute hemorrhagic gastroenteritis, acute congestive splenitis, acute congestive nephritis, fatty degeneration of the liver.” He was called for the purpose of proving the facts he found at the time he made his examination, and for no other purpose, and he was asked no other questions on direct examination, On cross-examination, he was asked his
 
 *97
 
 opinion by defendant as to the cause of death, and after objection on behalf of claimants, was permitted to answer. Such testimony was not, under the circumstances, the proper subject of cross-examination and could not affect claimants:
 
 Borovski v. Phila. & Reading Coal & Iron Co.,
 
 101 Pa. Superior Ct. 304. Under these circumstances, the rule of
 
 Mudano v. Phila. Rapid Transit Co.,
 
 289 Pa. 51, 137 A. 104, does not apply.
 

 There was ample undisputed testimony in the record to show that the decedent had not had any alcohol at any time on the date of his death or the day before and that he was a temperate man. In addition, there was ample testimony that, prior to the accident, the decedent had been in good health. It was stated on the record by counsel that defendant would have no testimony to contradict that of claimant that the decedent was in apparent good health prior to and up to the time of his death.
 

 Dr. Janjigian’s final answer, therefore, is that he does not know what caused the death. This leaves in the record only the uncontradicted opinion of Dr. Croop that the man was electrocuted.
 

 After a careful examination of the entire record, we are of the opinion that there is ample testimony to support the findings of the referee and the board.
 

 The assignments of error are overruled and judgment affirmed.